UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 23-12724-RGS

DJASON RODRIGUES and
DANIELSON RODRIGUES

v.

ROBERT F. SULLIVAN, in his capacity as
Mayor of the City of Brockton;
BRENDA PEREZ, in her capacity as
Chief of Police for the City of Brockton;
MICHAEL THOMAS, in his capacity as
the Superintendent of Schools for the City of Brockton;
and JASON MOSLEY

MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

September 3, 2024

STEARNS, D.J.

Plaintiffs Djason Rodrigues (Djason), a minor, and Danielson Rodrigues (Danielson), his father, bring this civil rights action against defendants Robert Sullivan, in his capacity as Mayor of the City of Brockton (Mayor Sullivan); Brenda Perez, in her capacity as Chief of Police for the City of Brockton (Chief Perez); Michael Thomas, in his capacity as Superintendent of Schools for the City of Brockton (Superintendent Thomas); and Jason Mosley (Officer Mosley) for the alleged use of excessive force during the November 17, 2021 arrest of Djason at Brockton High

School, where he was a pupil. Officer Mosley moves for summary judgment on the claims asserted against him.[1] Plaintiffs oppose only as to three of those claims:[2] the state claims of assault and battery (Count I) and loss of consortium (Counts V and VI); and the federal claim of excessive use of force (Count VII). For the following reasons, the court will allow the motion in part and deny it in part.

## BACKGROUND

The facts, viewed in the light most favorable to plaintiffs as the nonmoving party, are as follows. On November 17, 2021, Djason, then a 16-year-old student at Brockton High School, was on campus to take the MCAS exam. After completing the exam, he remained on school property mingling with his friends. As he rode a friend's bicycle during the lunch hour outside of the Red Building (one of the four Brockton High School buildings), he saw a group of students in a heated conversation with several of his friends. Djason rode into the crowd, alit from the bicycle, and threw a punch when

---

[1] Because the court allowed the motion of Mayor Sullivan, Chief Perez, and Superintendent Thomas to bifurcate the trial, the claims against these official-capacity defendants are not currently before the court.

[2] Plaintiffs do not contest the dismissal of Counts II-IV and X. *See* Pls.' Mem. in Opp'n to Def.'s Mot. for Summ. J. (Opp'n) [Dkt # 25] at 1 n.1. The court accordingly will allow this portion of Officer Mosley's motion without further discussion.

one of the individuals, fellow student Hillson Okocha (Okocha), approached him in what he perceived to be a menacing manner. The parties dispute whether the punch landed and, if it did, whether Okocha suffered any injury.

As Djason backed away from Okocha to avoid any further escalation of the confrontation, Officer Mosley grabbed him from behind (without announcing his presence) and slammed him to the ground. Although Djason immediately became compliant, Officer Mosley pinned him in a low mount prone position, with his leg crossing Djason's neck and cutting off his supply of oxygen. Officer Mosley held Djason in this position for at least 27 seconds before escorting him to a police vehicle.

## LEGAL STANDARD

Summary judgment is appropriate when, based upon the pleadings, affidavits, and depositions, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "To succeed, the moving party must show that there is an absence of evidence to support the nonmoving party's position." *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir. 1990). "'[T]he mere existence of a scintilla of evidence' is insufficient to defeat a properly supported motion for summary judgment." *Torres v. E.I. Dupont De Nemours & Co.*, 219 F.3d 13, 18 (1st

Cir. 2000), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## DISCUSSION

### I.     Excessive Use of Force (Count VII)

Count VII asserts a claim under 42 U.S.C. § 1983 for excessive use of force in violation of the Fourth Amendment. Officer Mosley seeks judgment as a matter of law on this claim, arguing that he is entitled to qualified immunity from liability.

Qualified immunity is a judicial doctrine meant to shield public officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Its purpose is to enable public officials "to act without fear of retributive suits for damages except when they should have understood that particular conduct was unlawful." *Limone v. Condon*, 372 F.3d 39, 44 (1st Cir. 2004).

"The First Circuit has adopted a two-part test to assess qualified immunity." *Cosenza v. City of Worcester*, 355 F. Supp. 3d 81, 94 (D. Mass. 2019). First, a court must decide "whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right." *Maldonado v.*

4

*Fontanes*, 568 F.3d 263, 269 (1st Cir. 2009).  Second, a court must decide "whether the right was 'clearly established' at the time of the defendant's alleged violation."  *Id.*, quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).  "Clearly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful."  *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (internal quotation marks and citation omitted).

"[*A*]*ll* claims that law enforcement officers have used excessive force — deadly or not — in the course of an arrest" are to be decided under a Fourth Amendment standard of reasonableness, the proper application of which "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Graham v. Connor*, 490 U.S. 386, 395, 396 (1989) (emphasis in original).  Because of the fact-intensive nature of the inquiry, when it comes to excessive force claims, the qualified immunity doctrine has special bite.  *See Kisela v. Hughes*, 584 U.S. 100, 104-105, 107 (2018) (*per curiam*) (cautioning courts of appeals against undue generality in their approach and noting that under Supreme Court precedent officers are entitled to qualified immunity unless

a prior case "squarely governs" – "a reasonable officer is not required to foresee judicial decisions that do not yet exist in instances where the requirements of the Fourth Amendment are far from obvious").

Because the standard by which excessive force is to be gauged is an objective one, "[a]n officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Graham,* 490 U.S. at 397. Moreover, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation." *Id.* at 396-397; *cf. Roy v. City of Lewiston*, 42 F.3d 691, 695 (1st Cir. 1994) ("[W]hether substantive liability or qualified immunity is at issue, the Supreme Court intends to surround the police who make these on-the-spot choices in dangerous situations with a fairly wide zone of protection in close cases.").

Despite this broad zone of protection, "[t]o overcome a claim of immunity, it is not necessary for the courts to have previously considered a particular situation identical to the one faced by the government official." *Caron v. Silvia*, 32 Mass. App. Ct. 271, 273 (1992). "[T]here can be the rare

'obvious case,' where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances." *Wesby*, 583 U.S. at 64, quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (*per curiam*). "It is enough, rather, that there existed case law sufficient to clearly establish that, if a court were presented with such a situation, the court would find that plaintiffs' rights were violated." *Hall v. Ochs*, 817 F.2d 920, 925 (1st Cir. 1987).

This truism has no less force in cases involving allegations of an excessive use of force, varying though the individual circumstances of each case may be. *See Avina v. Bohlen*, 882 F.3d 674, 679 (7th Cir. 2018) ("It strains the imagination to envision a scenario in which an officer could place a cooperative suspect's hands behind his back and break his arm if the officer were using a reasonable amount of force."); *Bryan v. McPherson*, 608 F.3d 614, 628 (9th Cir. 2010) (use of a stun gun to incapacitate a driver stopped for a seat belt infraction who, although acting erratically, neither attempted to flee nor posed any outward threat to the officer constituted a disproportionate and unjustified use of force); *Nelson v. City of Davis*, 685 F.3d 867, 883 (9th Cir. 2012) (same, firing pepper spray projectiles at a crowd of noisy but unthreatening student partygoers who at most might have been guilty of misdemeanor trespass).

Officer Mosley challenges plaintiffs' ability to establish that a constitutional violation occurred, contending that he "used only the necessary amount of force" given the circumstances before him.[3] Def.'s Mem. in Support of Mot. for Summ. J. (Mot.) [Dkt # 20] at 8. His argument that he "used only the necessary amount of force," however, hinges on the court accepting as true his version of disputed material facts.[4] When these disputed material facts are viewed in the light most favorable to plaintiffs, as they must be at this stage of the proceedings, a different picture emerges: Officer Mosley grabbed Djason from behind without warning after the altercation had already subsided, slammed him to the ground, and, even though Djason offered no resistance, placed him in a low mount prone

---

[3] Officer Mosley also challenges plaintiffs' ability to satisfy the clearly established prong, contending that "there was no reason for Officer Mosley to believe that his conduct violated Djason's rights." Mot. at 10. But this argument, too, relies on the court prematurely resolving material factual disputes in his favor.

[4] These facts include whether Officer Mosley saw Djason throw the punch at the other student; whether the punch landed and/or was severe enough to cause the victim's nose to bleed; whether Officer Mosley had reason to think that Djason posed an ongoing threat to other students as he approached; whether Officer Mosley said anything to Djason before grabbing him; whether Officer Mosley intended to bring Djason to the ground; whether Djason resisted arrest; whether Officer Mosley applied unnecessary and unauthorized pressure on Djason's neck while restraining him; and whether Officer Mosley kept Djason pinned to the ground for longer than necessary.

position in which Djason's ability to breathe was restricted for at least 27 seconds.  Because Officer Mosley does not contend that a juror crediting plaintiffs' account of the incident could not find the amount of force used to have been unreasonable under the circumstances or that an objectively reasonable officer would not have known his actions violated clearly established law,[5] a *brevis* disposition is inappropriate here.

## II. Assault and Battery (Count I)

Count I asserts a state law claim for assault and battery.  The parties agree that this claim rises or falls with the § 1983 excessive force claim, *see* Mot. 10; Opp'n at 17; *see also Raiche v. Pietroski*, 623 F.3d 30, 40 (1st Cir. 2010) ("Where a plaintiff alleges both a § 1983 excessive force claim and common law claims for assault and battery, our determination of the reasonableness of the force used under § 1983 controls our determination of the reasonableness of the force used under the common law assault and battery claims.").  For the same reasons the court is unable to enter summary

---

[5] Officer Mosley's concession on this point is wise.  The First Circuit clarified well before this incident took place that "exerting significant, continued force on a person's back 'while that [person] is in a face-down prone position after being subdued and/or incapacitated constitutes excessive force.'" *McCue v. City of Bangor*, 838 F.3d 55, 64 (1st Cir. 2016) (alteration in original), quoting *Weigel v. Broad*, 544 F.3d 1143, 1155 (10th Cir. 2008).

judgment on the § 1983 excessive force claim, the court declines to enter summary judgment on the common-law battery claim.

### III. Loss of Consortium (Counts V and VI)

Plaintiffs Danielson (Count V) and Djason (Count VI) bring separate claims for loss of consortium. Because a claim of loss of consortium arises from a "tortious injury to one's family member," *Limone v. United States*, 336 F. Supp. 2d 18, 48-49 (D. Mass. 2004), Danielson and Djason must each establish that Officer Mosley committed some underlying tort against the other, *see Doe v. Dennis-Yarmouth Reg'l Sch. Dist.*, 578 F. Supp. 3d 164, 183 (D. Mass. 2022) (a plaintiff "must assert an underlying tort claim" to prevail on a loss of consortium claim); *see also Sena v. Commonwealth*, 417 Mass. 250, 264 (1994) ("[A] claim for loss of consortium requires proof of a tortious act that caused the claimant's spouse personal injury. Although we have determined that a claim for loss of consortium is independent of the spouse's cause of action, we have not repudiated the implicit prerequisite that the injured spouse have a viable claim.") (citations omitted). Here, the only underlying tortious act identified by plaintiffs is Officer Mosley's alleged use of excessive force against Djason during his arrest; there is no suggestion that Officer Mosley committed any separate tortious act against Danielson from

10

which Djason might derive a loss of consortium claim.[6]  The court accordingly must enter summary judgment in Officer Mosley's favor on Count VI.[7]

The court will, however, deny the motion as to Count V.  Although Officer Mosley asserts that "[i]t is clear the arrest had no impact on the relationship between Djason and Danielson," Mot. at 15, Danielson attests otherwise,[8] *see* Perry Aff. [Dkt # 26], Ex. 19.  Because the record before the court is ambiguous, it is for the jury to resolve whether Danielson has shown concrete injury to the relationship between him and Djason because of Djason's alleged tortious injury.

---

[6] That Danielson has experienced emotional distress in the wake of the incident and that Djason has felt a vaguely defined impairment to the father-son relationship does not mean that Officer Mosley committed any underlying tort against Danielson.

[7] Any potential of a consortium claim arises only under the common-law battery claim; there is no ancillary cause of action for loss of consortium under § 1983.  *Id*. at 264-265.

[8] While a reasonable juror could certainly choose to discredit this testimony considering Danielson's inability to offer specifics during his deposition, the court is not at liberty to make this decision on their behalf.

11

## ORDER

For the foregoing reasons, the motion to dismiss is <u>ALLOWED IN PART</u> and <u>DENIED IN PART</u>.  Judgment shall enter in Officer Mosley's favor as to Counts II, III, IV, VI, and X.  Counts I, V, and VII will proceed to trial.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE